UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LUIS GERMOSEN,

                            Plaintiff,

            - against -

ABM INDUSTRIES CORPORATION,

                         Defendant.
------------------------------------------------------------x

**OPINION AND ORDER**

13-cv-1978 (ER)

Ramos, D.J.:

      This employment discrimination action arises out of events that allegedly took place while Plaintiff Luis Germosen ("Plaintiff") was employed by Defendant ABM Industries Corporation ("Defendant").[1]  Doc. 8.  The case is currently proceeding pursuant to an Amended Complaint, which alleges federal claims for discrimination and retaliation in violation of the Americans with Disabilities Act (the "ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII").  *Id.*  Plaintiff also alleges claims under the New York State Human Rights Law (the "NYSHRL") and the New York City Human Rights Law (the "NYCHRL"), along with a claim for breach of contract.  *Id.*

      Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 15.  The motion deals not with the merits of the various claims, but rather with threshold questions of preemption and arbitrability.  Specifically, Defendant argues that Plaintiff's claims are preempted by the Labor Management Relations Act

---

[1] Defendant indicates that Plaintiff's employer was actually ABM Janitorial Services Northeast, Inc., a subsidiary of ABM Industries Incorporated.  *See* Def.'s Mem. of Law in Supp. at 1 n.1.  This confusion appears to be reflected in the Amended Complaint itself, which includes references to "ABM Janitorial Services – Northeast, Inc."  *See* Am. Compl. ¶¶ 9, 13.  Since the nomenclature is immaterial for purposes of the instant motion, this issue need not be resolved at the present time.

(the "LMRA") and that they are subject to mandatory arbitration pursuant to the operative collective bargaining agreement (the "CBA").[2]

For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

## I. Factual Background

The following facts are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion). Additional facts are drawn from the CBA.[3]

### A. Plaintiff's Employment and Termination

Plaintiff is a "Hispanic male of Dominican national origin." Am. Compl. ¶ 8. He was 52 years old at the time the Amended Complaint was filed. *Id.* Defendant, Plaintiff's former employer, provides facility management and maintenance services to businesses in the northeastern United States. *See id.* ¶¶ 9, 13. Plaintiff alleges that, when he was hired as a porter/cleaner in 2005, he was issued an Employee Handbook that set out the "terms, policies and conditions of the employment relationship." *Id.* ¶¶ 20-21. He also alleges that Defendant

---

[2] A copy of the CBA is included in the record as Exhibit D to the Declaration of Harry Weinberg (Doc. 16).

[3] Although it is neither attached to nor incorporated by reference into the Amended Complaint, the CBA is properly before the Court regardless of whether the motion is analyzed under Rule 12(b)(1) or 12(b)(6). Courts are permitted to consider documents outside the pleadings when ruling on a 12(b)(1) motion. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Even if the motion were to be evaluated under Rule 12(b)(6), "[t]he CBA may be considered because [Plaintiff's] complaint 'relies heavily upon its terms and effect,' *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), in the sense that his complaint is based entirely on his employment relationship with [Defendant], of which the CBA is an integral part." *Veliz v. Collins Bldg. Servs., Inc.*, No. 10 Civ. 6615 (RJH), 2011 WL 4444498, at *1 n.2 (S.D.N.Y. Sept. 26, 2011).

maintained an Anti-Harassment and Discrimination Policy, though he claims that that policy failed to account for situations wherein the harassment or discrimination was committed by supervisors or managers. *Id.* ¶ 19.  Moreover, Plaintiff alleges that Defendant's Albanian and Caucasian employees are more favorably treated and are subject to less job scrutiny than Hispanic employees are.  *See id.* ¶¶ 46-49.

During the time period at issue, Plaintiff was diagnosed with a number of medical conditions, including cardiomyopathy, diabetes and high blood pressure, all of which he fully disclosed to ABM.  *Id.* ¶¶ 21-22.  Plaintiff alleges that, in addition to disclosing these diagnoses to his supervisors, he made multiple requests for reasonable accommodation in order to avoid "additional and unnecessary physical stress as to aggravate his medical condition."  *Id.* ¶¶ 27, 30-31.  Specifically, he alleges that he "consistently" applied for the position of shampoo rug cleaner and was denied the position despite being overqualified.  *Id.* ¶ 50.

Plaintiff alleges that, following one of these requests (in April 2011) and despite what had previously been an "almost flawless employee record," he was subjected to an "unjustified frivolous and pre-textual campaign of harassment and retaliation."  *Id.* ¶¶ 28-29, 32.  This included an unjustified uptick in the number of Employee Corrective Action Notices ("ECANs") issued to Plaintiff by his supervisor.  *Id.* ¶ 34.  Plaintiff alleges that Defendant either knew or had reason to know of the supervisor's conduct, which targeted Plaintiff on account of his disability, race, color, age and national origin.  *Id.* ¶ 37.  The Amended Complaint describes a number of ECANs that Plaintiff alleges were baseless.  *See id.* ¶¶ 38-43.  In three instances, these allegedly frivolous ECANs prompted Defendant to suspend Plaintiff.  *See id.* ¶¶ 40-42.  The first such suspension was for three days.  *Id.* ¶ 40.  After Plaintiff filed a complaint with his union, Defendant reversed the suspension in part and restored Plaintiff to his original position, with

3

back pay. *Id.* In the two subsequent instances, Defendant suspended Plaintiff indefinitely and without pay. *Id.* ¶¶ 41-42. Each time, after Plaintiff "sought redress from his union," Defendant reduced the period of suspension and restored Plaintiff to his original position. *Id.*

On March 12, 2012, Plaintiff's supervisor cited him for talking on his cellphone and being confrontational toward a client's employee. *Id.* ¶ 43. The following day, Defendant terminated Plaintiff in light of his "significant disciplinary record." *Id.* (internal quotation marks omitted).

Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC") and was issued a right to sue letter. *Id.* ¶ 6. The instant lawsuit followed. Plaintiff alleges that he was wrongfully terminated in retaliation for exercising his rights under the ADA and Title VII and that he was discriminated against in violation of Title VII, the NYSHRL and the NYCHRL. *Id.* ¶¶ 53-65, 73-80. He also alleges breach of contract on the grounds that his offer of employment carried with it implied promises that he "would be treated fairly and in good faith and not discriminated against due to his disability, race, color, age and/or national origin." *Id.* ¶¶ 66-72. According to Plaintiff, "[t]he terms and statements contained in Defendants' [sic] Employee Handbook created an implied contract with the Plaintiff, which from its expressed terms provided that Defendant would not unlawfully discriminate against the Plaintiff during its employment relationship with Plaintiff." *Id.* ¶ 69. He also alleges that these implied promises were accompanied by a duty of good faith and fair dealing. *Id.* ¶ 70. Plaintiff claims that Defendant breached its contractual obligations "when it failed to accommodate Plaintiffs' [sic] reasonable accommodation request; discriminated against Plaintiff due to his disability, race,

and/or national origin; and, wrongfully terminated Plaintiff for frivolous, baseless and pre-textual reasons." *Id.* ¶ 71.[4]

### B. The CBA

The operative CBA was entered into between Plaintiff's union, Services Employees International Union, Local 32BJ (the "Union"), and the Realty Advisory Board on Labor Relations, Inc. ("RAB"), a multi-employer bargaining group of which Defendant is a member. *See* Def.'s Mem. of Law at 3.[5]   Articles V and VI of the CBA set out a two-step grievance process, along with arbitration procedures. CBA at 13-20. The arbitrator is to "decide all differences arising between the parties as to interpretation, application or performance of any part of [the CBA] and such other issues as the parties are expressly required to arbitrate before him/her under the terms of [the CBA]." *Id.* at 15. These arbitration procedures are to constitute "the sole and exclusive method for the determination of all such issues." *Id.* at 17.

Article XVI of the CBA includes a "no discrimination" provision, the core language of which reads as follows:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Family Medical Leave Act, the New York State Human Rights Law, the New

---

[4] In its papers, Defendant argues that "[t]he Complaint alleges breach of contract but there is no contract between [Defendant] and Plaintiff and all of Plaintiff's rights and [Defendant's] obligations with respect to Plaintiff's employment are governed by the CBA." Def.'s Mem. of Law in Supp. at 7 n.8. As noted, however, the Amended Complaint specifically alleges the existence of an implied contract, based at least in part on statements allegedly contained within Defendant's Employee Handbook. Am. Compl. ¶ 69. The Court cannot credit Defendant's conclusory assertion to the contrary, particularly given that the Employee Handbook is not included in the record currently before the Court.

[5] Plaintiff does not dispute—and, indeed, appears to concede—that he was a member of the Union and that the CBA attached to the Weinberg declaration is the one at issue in this case. *See* Pl.'s Mem. of Law in Opp'n at 5-6.

> York City Human Rights Code . . ., or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id.* at 112. In light of a dispute between the Union and RAB regarding whether individual employees had the right to pursue such discrimination claims in court if the Union declines to pursue arbitration, the parties entered into a 2010 Agreement and Protocol (the "Protocol"). *See* Decl. of Harry Weinberg Ex. E. The terms of the Protocol were subsequently incorporated into the CBA. *See* CBA at 114. The Protocol provides for mandatory mediation of discrimination claims brought by individual employees. *See id.* at 115, 117.[6] In addition, if the Union declines to arbitrate a particular employment discrimination claim, the Protocol permits the individual employee to arbitrate the claim on his own. *See id.* at 118.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*,

---

[6] For ease of reference, citations to provisions of the Protocol refer to the portion of the CBA in which that agreement has since been incorporated. In all instances, the relevant language can also be found in Exhibit E to the Weinberg declaration.

547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *Attica Cent. Sch.*, 386 F.3d at 110 (citing *Drakos*, 140 F.3d at 131).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

**III.     Discussion**

### A. The LMRA Does Not Preempt Plaintiff's Claims

As a threshold matter, Defendant argues that "Plaintiff's claims clearly fall under, are governed by and require the interpretation of the grievance, arbitration and 'no discrimination' clauses of the CBA" and thus are preempted by section 301 of the LMRA. Def.'s Mem. of Law in Supp. at 6-7.

Section 301 provides, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that this provision completely preempts "any state cause of action" for such violations. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983).[7] This preemptive effect extends to "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987)); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (noting that claims that are "inextricably intertwined with consideration of the terms of the labor contract" will be preempted). That said, section 301 does not preempt "every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement." *Lueck*, 471 U.S. at 211. "'[I]t is the legal character of a claim, as 'independent' of rights under the

---

[7] To the extent that Defendant's preemption argument is directed toward Plaintiff's *federal* discrimination claims, that argument is without merit. *See Chopra v. Display Producers, Inc.*, 980 F. Supp. 714, 719 (S.D.N.Y. 1997) (Chin, J.) ("Section 301 simply does not preempt Title VII claims; preemption of claims under other federal statutes is not necessary to ensure uniformity of adjudication.").

collective-bargaining agreement'—and not whether a grievance arising from the same set of facts could be pursued under the agreement—'that decides whether a state cause of action may go forward.'" *Williams v. Comcast Cablevision of New Haven, Inc.*, 322 F. Supp. 2d 177, 182 (D. Conn. 2004) (alteration in original) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994)).

In this case, because Plaintiff's state law "'claims turn[] mainly on the behavior and motivation of the employer, and not on interpretation of the meaning of the parties' labor agreement,' they are not preempted by § 301." *Shipkevich v. Staten Island Univ. Hosp.*, No. 08 Civ. 1008 (FB) (JMA), 2009 WL 1706590, at *5 (E.D.N.Y. June 16, 2009) (alteration in original) (quoting *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 527-28 (S.D.N.Y. 2008)); *see also Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 181-82 (S.D.N.Y. 2003) (noting that the "same legal standards" govern both the NYCHRL and the NYSHRL, and then observing that "[d]istrict courts within the Second Circuit have repeatedly come to the conclusion that [NYSHRL] claims are not preempted by § 301 of the LMRA").[8]  In other words, Plaintiff's State and City Human Rights Law claims exist independently of any potential claims that Plaintiff might have been able to assert for breach of the CBA itself.[9]  *Cf. Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) ("In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement."); *Bryant*, 550 F. Supp. 2d at 529 ("The right to be free from such discrimination arises from state law, not from the CBA, and it is a non-

---

[8] Notably, while Defendant cites an array of case law dealing with the arbitrability of the claims at issue (discussed *infra*), it does not cite a single case—from this or any other circuit—in support of its argument that the LMRA preempts discrimination claims of the type alleged here.

[9] The Court expresses no opinion as to whether any such claims exist.

negotiable right." (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994))). The LMRA does not, therefore, preempt Plaintiff's claims under the NYSHRL and the NYCHRL.[10]

Thus, to the extent Defendant moves to dismiss on preemption grounds, that portion of Defendant's motion is denied.[11]

---

[10] Defendant states—without supporting argumentation—that "Plaintiff's breach of contract claim is preempted by the Labor Management Relations Act." Def.'s Mem. of Law in Supp. at 5. It is possible that resolution of the state law contract claim will require the Court to construe the terms of the CBA, in which case it would, in fact, be preempted. *See, e.g.*, *Dulay v. United Technologies Corp.*, No. 3:93-CV-2020 (JAC), 1994 WL 362149, at *4 (D. Conn. June 10, 1994) (Cabranes, J.) ("While the plaintiff's breach of implied contract claim is not based directly on the CBA, the court cannot evaluate the validity of this claim without determining whether the CBA was intended to be the sole agreement between the parties."). However, such is not necessarily the case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987) ("[I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. . . . [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." (emphasis in original)). The record is simply too sparse to permit the Court to make this determination in the context of a Rule 12 motion, as the Court is required to accept as true Plaintiff's allegations regarding the statements contained in the Employee Handbook.

Similar reasoning applies to the extent the contract claim is based on the implied duty of good faith and fair dealing. *See Allocco v. Dow Jones & Co., Inc.*, No. 02 Civ. 1029 (LMM), 2002 WL 1402084, at *6 (S.D.N.Y. June 27, 2002) (noting that, because an implied covenant claim presupposes a contractual relationship, such a claim will be preempted if the only contract at issue is a collective bargaining agreement).

[11] Because the Court has not held Plaintiff's claims preempted, it need not address Defendant's arguments regarding the exhaustion requirement that must be satisfied before a section 301 suit will be allowed to go forward. *See* Def.'s Mem. of Law in Supp. at 8. As the discussion that follows will make clear, however, Plaintiff is nevertheless required to submit his claims to arbitration.

### B. Plaintiff's Claims Are Subject to Mandatory Arbitration[12]

Though not preempted, Plaintiff's claims are subject to mandatory arbitration pursuant to the terms of the CBA.[13]

In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Supreme Court examined an earlier version of this same CBA, analyzing the "no discrimination" provision in the context of an Age Discrimination in Employment Act ("ADEA") claim. The Court upheld the Union-negotiated arbitration provision as it applied to the respondent employees' statutory claims, noting that nothing in the text or legislative history of the ADEA precluded arbitration of such claims. *Id.* at 257-58. The Court summarized its holding as follows:

> The [National Labor Relations Act (the "NLRA")] provided the Union and the RAB with statutory authority to collectively bargain for arbitration of workplace discrimination claims, and Congress did not terminate that authority with respect to federal age-discrimination claims in the ADEA. Accordingly, there is no legal basis for the Court to strike down the arbitration clause in this CBA, which was freely negotiated by the Union and the RAB, and which clearly and unmistakably

---

[12] There is a "lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Tyler v. City of New York*, No. 05 Civ. 3620 (SLT) (JO), 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (collecting cases). However, it is not necessary for the Court to resolve that ambiguity in deciding the instant motion. *See Greene v. Am. Bldg. Maint.*, No. 12 Civ. 4899 (DLI) (LB), 2013 WL 4647520, at *2 n.2 (E.D.N.Y. Aug. 28, 2013) (quoting *Tyler* in the context of a similar motion brought under both Rule 12(b)(1) and 12(b)(6), but declining to reach the issue "because the result 'would be the same under nearly any of the available mechanisms'" (quoting *Veliz*, 2011 WL 4444498, at *3)).

[13] The state law contract claim is premised on the same allegations of discriminatory conduct that underlie Plaintiff's statutory claims. Indeed, the reference to the Employee Handbook speaks exclusively in terms of a promise that "Defendant would not *unlawfully* discriminate against the Plaintiff." Am. Compl. ¶ 69 (emphasis added). In other words, the purported contract is alleged to have barred acts of discrimination that were already otherwise unlawful. The "no discrimination" clause clearly provides that the CBA's grievance and arbitration procedures apply to "[a]ll such claims," including, but not limited to, those brought pursuant to the various catalogued statutes. CBA at 112. The Protocol likewise applies to claims concerning violations of the no discrimination clause, "including statutory claims." *Id.* at 117. Plaintiff cannot avoid arbitration simply by repackaging these claims as ones for breach of an implied contract. Thus, even if a state law contract claim exists (*i.e.*, regardless of whether any such claim would be preempted by the LMRA), that claim must be arbitrated pursuant to the CBA.

>
> requires respondents to arbitrate the age-discrimination claims at issue in this appeal.  Congress has chosen to allow arbitration of ADEA claims.  The Judiciary must respect that choice.

*Id.* at 260.

Courts throughout this Circuit have since applied *Pyett*'s reasoning to claims arising under Title VII, the ADA, the NYSHRL and the NYCHRL, concluding that those statutes are equally susceptible to mandatory arbitration agreements.  *See, e.g.*, *Greene v. Am. Bldg. Maint.*, No. 12 Civ. 4899 (DLI) (LB), 2013 WL 4647520 (E.D.N.Y. Aug. 28, 2013) (dismissing, *inter alia*, Title VII and ADA claims); *Borden v. Wavecrest Mgt. Team Ltd.*, No. 11 Civ. 6737 (GBD) (FM), 2012 WL 4094959, at *2 (S.D.N.Y. Sept. 18, 2012) (observing that there is neither any language in the ADA rendering claims non-arbitrable nor "any authority that suggests that the ADA favors resolution of discrimination claims in federal court rather than before an arbitral panel"), *reconsideration denied*, No. 11 Civ. 6737 (GBD), 2013 WL 3324293 (S.D.N.Y. June 27, 2013), *aff'd*, No. 12-4506, 2014 WL 3030952 (2d Cir. July 7, 2014) (summary order); *Veliz v. Collins Bldg. Servs., Inc.*, No. 10 Civ. 06615 (RJH), 2011 WL 4444498, at *3 (S.D.N.Y. Sept. 26, 2011) ("[C]ourts in this Circuit have held that *Pyett*'s rationale applies equally to Title VII claims, and that Title VII claims therefore are subject to mandatory arbitration, provided the arbitration agreement 'clearly and unmistakably' requires as much."); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470 (S.D.N.Y. 2010) (staying Title VII, NYSHRL and NYCHRL claims, including claims for retaliation); *Johnson v. Tishman Speyer Properties, L.P.*, No. 09 Civ. 1959 (WHP), 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009) (dismissing Title VII, NYSHRL and NYCHRL claims); *Borrero v. Ruppert Hous. Co., Inc.*, No. 08 Civ. 5869 (HB), 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) (examining a CBA "materially

indistinguishable" from the one at issue in *Pyett* and observing that "[i]t is clear that the [Supreme] Court's holding applies with equal force to Title VII claims").[14]

In arguing against the enforceability of the CBA's arbitration procedures, Plaintiff appears to ignore the fact that some of these cases dealt with the exact same provisions now at issue, including those that were introduced through the Protocol.[15]  *See Bouras v. Good Hope Mgmt. Corp.*, No. 11 Civ. 8708 (WHP), 2012 WL 3055864, at *4 (S.D.N.Y. July 24, 2012) (discussing the Protocol before concluding that, "regardless of the Union's participation, [the plaintiff] must arbitrate his Title VII claim"); *Duraku*, 714 F. Supp. 2d at 474 ("[T]he CBA and February 2010 Agreement between the Union and the RAB expressly require the resolution of plaintiffs' statutory claims through mediation and/or arbitration.").  Thus, Plaintiff's arguments that "the CBA does not afford the employee the right to demand arbitration" and that "[t]here is no guarantee that Plaintiff will be allowed to submit his claims to arbitration" are meritless.  *See* Pl.'s Mem. of Law in Opp'n at 13.[16]

---

[14] The fact that the arbitration provisions at issue in this case were collectively bargained for and are routinely enforced by courts belies any suggestion that these provisions are substantively and/or procedurally unconscionable as a general matter.  *See* Pl.'s Mem. of Law in Opp'n at 8-10 (discussing principles of unconscionability generally).  Indeed, as noted above, *Pyett* expressly countenanced the Union's ability to mandate arbitration of its members' statutory discrimination claims.  556 U.S. at 274 ("We hold that a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law.").

[15] The Protocol was adopted subsequent (and in direct response) to the Supreme Court's holding in *Pyett*.  *See* CBA at 113-14.

[16] Plaintiff's argument that he is not bound by the Protocol because it was entered into five years after he joined the Union is also without merit.  *See* Pl.'s Mem. of Law in Opp'n at 11.  Indeed, this Court has previously held that the Protocol is binding even in situations where the individual claims themselves were brought prior to the Protocol's adoption.  *See Duraku*, 714 F. Supp. 2d at 474 ("The fact that the [Protocol] does not expressly state that it applies 'retroactively' or to employees who, like plaintiffs, have already elected to pursue their statutory rights in another forum does not relieve plaintiffs of their obligation to abide by the mediation and arbitration protocol.").  Similarly meritless is Plaintiff's conclusory assertion—unaccompanied by any citations—that the CBA "can no longer bind the Plaintiff, as he is no longer a member of the Union."  Pl.'s Mem. of Law in Opp'n at 2.  The Court declines to

13

Equally unavailing is Plaintiff's argument that "[t]he CBA arbitration agreement is also invalid because it does not provide for all statutory rights and remedies." *Id.* at 10.  To the contrary, the "no discrimination" clause of the CBA expressly provides that the "[a]rbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination." CBA at 112; *see also Gildea v. BLDG Mgmt.*, No. 10 Civ. 3347 (DAB), 2011 WL 4343464, at *6 (S.D.N.Y. Aug. 16, 2011) (relying on this language from the CBA in rejecting an argument that the terms of the CBA amount to a prospective waiver of a plaintiff's statutory rights).[17]  Though Plaintiff argues—without citation—that the Protocol "allows the Defendant, as employer, to choose the arbitrator who would preside over the proceedings," Pl.'s Mem. of Law in Opp'n at 11, a review of the Protocol belies this contention.  *See* CBA at 118 (leaving selection of the arbitrator to the employer *and* the employee).[18]

There is one potential exception left open by *Pyett*—namely, that an arbitration agreement will not be enforced where it amounts to a "substantive waiver of federally protected

---

accept an argument that would essentially allow Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit.

[17] In arguing that statutory remedies are unavailable under the CBA, Plaintiff appears to overlook this language in the "no discrimination" clause, focusing instead on the general arbitration provisions set out Article VI, Paragraph 4. *See* Pl.'s Mem. of Law in Opp'n at 12.  In any event, the Court does not read Article VI as restrictively as Plaintiff does.  *See* CBA at 17 (providing that the arbitrator "shall have the power to grant *any* remedy required to correct a violation of [the CBA], *including, but not limited to* damages and mandatory orders" (emphasis added)).  Similarly, Plaintiff erroneously asserts that the CBA does not require a written arbitration award.  *Compare* Pl.'s Mem. of Law in Opp'n at 11, *with* CBA at 16 ("If the Arbitrator shall fail to render his/her *written award* within [thirty days of the hearing], either party may serve a written demand upon him/her that the award must be made within ten (10) days after said demand." (emphasis added)).

[18] To the extent that Plaintiff objects to the Union's ability to control the grievance and arbitration processes in the event that it *does* choose to take up an individual employee's claim, such Union control is unremarkable in the labor relations context.  The Supreme Court noted as much in *Pyett*:  "It was Congress' verdict [in passing the NLRA] that the benefits of organized labor outweigh the sacrifice of individual liberty that this system necessarily demands." 556 U.S. at 271; *see also id.* at 269-70 (noting that judicial policy concerns over union control of the grievance process cannot override Congress's decision to permit mandatory arbitration of statutory claims).

14

civil rights." 556 U.S. at 273-74.  Plaintiff erroneously concludes that this exception applies here.  *See* Pl.'s Mem. of Law at 13-16.[19]  First, Plaintiff advances a statute of limitations argument that overlooks the express language in the Protocol.  *Compare id.* at 15 (discussing the applicable limitations period under the general grievance provision), *with* CBA at 115 (providing that a claim shall be deemed to be filed within the applicable statutory statute of limitations if timely filed in a forum provided for by statute).  Assuming Plaintiff's claims were timely brought in this (or any other proper) forum, then they are timely for purposes of the CBA.

Plaintiff next argues that "the Union precluded [him] from seeking arbitration under the no-discrimination protocol" when it "provided a quick fix to Plaintiff's claims" rather than declining to arbitrate.[20]  Pl.'s Mem. of Law in Opp'n at 16.  This argument reflects a misunderstanding of the notion of "substantive waiver."  *See Gildea*, 2011 WL 4343464, at *3 ("[T]he *Pyett* dicta does not allow courts to disregard arbitration clauses whenever a plaintiff feels that he hasn't been fairly treated by the union of which he is a member.  Rather, under standards well-established in case law, courts should decline to enforce arbitration clauses which prospectively waive a plaintiff's statutory rights or which prevent him from effectively vindicating them in arbitration.").  To the extent the Union's "quick fixes" resolved any of Plaintiff's claims to the point that arbitration was no longer necessary, the CBA worked exactly

---

[19] For the reasons discussed above, Plaintiff's arguments are meritless to the extent that they are based on the misconception that employees cannot arbitrate their claims without Union participation (*i.e.*, to the extent Plaintiff ignores the clear effect of the Protocol).  *See* Pl.'s Mem. of Law in Opp'n at 14 (objecting to provisions that give the Union "sole discretion as to whether to submit [members'] claims to arbitration without providing any recourse whatsoever to the union member claiming to be aggrieved").  The same is true of Plaintiff's objections to the manner in which Union-prosecuted arbitrations are conducted.  *See id.* at 16 (arguing that the Union's ability to appear without the grievant amounts to a denial of due process).

[20] Given that Plaintiff's only allegations of Union intervention relate to one-off reductions of suspensions, it is not at all clear that the "quick fixes" at issue had any effect on the retaliation and discrimination claims Plaintiff now seeks to pursue, particularly those relating to his ultimate termination.

as it was supposed to, and Plaintiff cannot now seek further redress in federal court merely because he is dissatisfied with the Union's solution.[21] However, if Plaintiff still had unresolved statutory claims, the CBA clearly provided him with access to an arbitral forum, either through the Union or, if the Union chose not to arbitrate, on his own.[22] It is his failure to exhaust *those* avenues, not anything the Union did, that renders his federal lawsuit premature. Nothing in the Amended Complaint indicates what redress, if any, Plaintiff sought from the Union with respect to his termination or his more general allegations of workplace discrimination—and there is certainly nothing suggesting that he took any efforts to pursue arbitration on his own if and when the Union declined to act.[23]

---

[21] It bears noting that Plaintiff has not asserted a fair representation claim against the Union. *Cf. Pyett*, 556 U.S. at 272 ("Given this avenue that Congress has made available to redress a union's violation of its duty to its members, it is particularly inappropriate to ask this Court to impose an artificial limitation on the collective-bargaining process.").

[22] Plaintiff is mistaken when he suggests that, by achieving a "quick fix" resolution of Plaintiff's claims, "the Union did not 'decline' to proceed to arbitration." Pl.'s Mem. of Law in Opp'n at 16. If Plaintiff sought arbitration and the Union instead adopted an alternative course of action, then clearly the Union "declined" to arbitrate for purposes of the Protocol. The only way that such an alternative approach could preclude Plaintiff from pursuing arbitration on his own would be if it obviated the need for further redress altogether.

[23] *Kravar v. Triangle Services., Inc.*, No. 06 Civ. 7858 (RJH), 2009 WL 1392595 (S.D.N.Y. May 19, 2009), is distinguishable because it predates the Protocol; thus, when the Union refused to pursue the plaintiff's statutory claims in that case, the CBA "operated to preclude [her] from raising her disability-discrimination claims in *any* forum." *Id.* at *3 (emphasis in original). Here, the Protocol clearly provides Union members with an individual means of redress. Similarly, the Second Circuit's decision in *Italian Colors Restaurant v. American Express Travel Related Services Company (In re American Express Merchants' Litigation)*, 554 F.3d 300 (2d Cir. 2009), rejected a class action waiver that would have resulted in "[t]he effective negation of a private suit under the antitrust laws." *Id.* at 319. In addition to being distinguishable, the Second Circuit's holding in *American Express* was vacated by the Supreme Court (at the conclusion of a series of subsequent proceedings) in *American Express Co. v. Italian Colors Restaurant*, --- U.S. ---, 133 S. Ct. 2304 (2013).

Thus, Plaintiff's claims are subject to mandatory arbitration pursuant to the terms of the CBA.[24]  If Plaintiff wishes to proceed with those claims, he is directed to submit to the mediation and arbitration procedures contemplated by the CBA and the Protocol.

### C.  All Claims Will Be Dismissed Without Prejudice To Refile

Because this case involves issues that are arbitrable pursuant to a written agreement, the Federal Arbitration Act requires that the Court stay the proceedings pending arbitration.  *See* 9 U.S.C. § 3.  However, "courts have the discretion to dismiss—rather than stay—an action when *all* of the issues in it must be arbitrated." *Johnson*, 2009 WL 3364038, at *4 (emphasis in original) (quoting *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001)) (internal quotation marks omitted).  The Court will therefore dismiss the instant action, as all of Plaintiff's claims are arbitrable and "no useful purpose will be served by granting a stay of these proceedings." *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 96 (S.D.N.Y. 1997).  However, should the Union frustrate Plaintiff in his attempt to avail himself of the CBA's

---

[24] Plaintiff notes that Article VI of the CBA is "silent as to discovery," citing the California Supreme Court's decision in *Armendariz v. Found. Health Psychcare Services., Inc.*, 6 P.3d 669, 682 (2000), for the proposition that an arbitration agreement must "provide for more than minimal discovery." Pl.'s Mem. of Law in Opp'n at 10-11.  *Armendariz* was describing a standard set forth by the District of Columbia Circuit in *Cole v. Burns International Security Services.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997), which in turn was applying the Supreme Court's holding in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  *Gilmer*—the only one of those cases that is binding on this Court—did not specifically impose a "more than minimal discovery" formulation, instead merely observing that there had not been any showing that the discovery procedures available in that case would "prove insufficient to allow . . . claimants such as [the petitioner] a fair opportunity to present their claims." 550 U.S. at 31.  While Plaintiff is correct that Article VI of the CBA does not address discovery procedures, the *Pyett* Court specifically quoted *Gilmer* on the issue of discovery before concluding that, "[a]t bottom, objections centered on the nature of arbitration do not offer a credible basis for discrediting the choice of that forum to resolve statutory antidiscrimination claims." 556 U.S. at 269.  Thus, even though *Pyett* did not specifically note Article VI's silence on discovery procedure, the Court was clearly attune to concerns regarding the breadth of discovery available in arbitration proceedings.  Given that *Pyett* was enforcing the very arbitration agreement at issue in this case, and given that numerous courts within this Circuit have since followed suit, the Court declines to reverse course—based solely on the CBA's silence on this one procedural point—absent contrary guidance from the Supreme Court or the Second Circuit.

arbitration procedures, he will be allowed to refile his claims in federal court. The dismissal will therefore be without prejudice. *See Veliz*, 2011 WL 4444498, at *4 (dismissing the plaintiff's claims without prejudice because, "if the CBA operates to preclude [the plaintiff's] attempt, if any, to resolve his statutory claims through the procedures set forth therein, the CBA will be unenforceable").

### IV.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss is GRANTED, and the case is dismissed without prejudice.

The Clerk of the Court is respectfully directed to terminate the motion (Doc. 15) and to close this case.

It is SO ORDERED.

Dated:   August 26, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.